

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

2-18-3627

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ruiz

**DEFENDANTS**
BOARDWALK 1000, LLC

18  3627

**(b)** County of Residence of First Listed Plaintiff    Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Atlantic County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kalikhman & Rayz, LLC
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006    Phone: (215) 364-5030

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding     ☐ 2   Removed from State Court     ☐ 3   Remanded from Appellate Court     ☐ 4   Reinstated or Reopened     ☐ 5   Transferred from Another District *(specify)*     ☐ 6   Multidistrict Litigation - Transfer     ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12101
Brief description of cause:
Violation of the ADA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE            DOCKET NUMBER

DATE
08/23/2018

SIGNATURE OF ATTORNEY OF RECORD

AUG 24 2018

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

```
Court Name: EDPA-Philadelphia
Division: 2
Receipt Number: PPE183634
Cashier ID: stomas
Transaction Date: 08/24/2018
Payer Name: KALIKHMAN AND RAYZ
----------------------------------
CIVIL FILING FEE
 For: KALIKHMAN AND RAYZ
 Amount:        $400.00
CIVIL FILING FEE
 For: KALIKHMAN AND RAYZ
 Amount:        $400.00
CIVIL FILING FEE
 For: KALIKHMAN AND RAYZ
 Amount:        $400.00
CIVIL FILING FEE
 For: KALIKHMAN AND RAYZ
 Amount:        $400.00
CIVIL FILING FEE
 For: KALIKHMAN AND RAYZ
 Amount:        $400.00
----------------------------------
CREDIT CARD
 Amt Tendered:  $2,000.00
----------------------------------
Total Due:      $2,000.00
Total Tendered: $2,000.00
Change Amt:     $0.00

18-CV-3624 TO 3628
```

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $53 fee will
be charged for a returned check.



## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18    3627**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: c/o Kalikhman & Rayz 1051 County Line Rd Suite #... Huntingdon Valley PA

Address of Defendant: 1000 Boardwalk Atlantic City, NJ

Place of Accident, Incident or Transaction: Atlantic County, NJ

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/24/18 _____  _____  87976
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** **Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☒ 11. All other Federal Question Cases
  *(Please specify):* 42 USC 1201

**B.** **Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Eva Rayz , counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

**AUG 24 2018**

DATE: 8/24/18 _____  _____  87976
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

Ruiz

                v.

BOARDWALK 1000, LLC, et al.

CIVIL ACTION

**18** 3627

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      (x)

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( )

| 8/23/2018 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 364-5030 | (215) 364-5029 | erayz@kalraylaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AUG 24 2018




$400

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA RUIZ, | Case No. 18 3627 |
| Plaintiff(s) | |
| v. | CIVIL ACTION COMPLAINT |
| BOARDWALK 1000, LLC d/b/a HARD ROCK HOTEL & CASINO ATLANTIC CITY; and DOES 1-10. | Jury Trial Demanded |
| Defendant(s) | FILED AUG 2 4 2018 |

KATE BARKMAN, Clerk
By_____Dep. Clerk

### CIVIL ACTION COMPLAINT

Jessica Ruiz ("Plaintiff" or "Ruiz") alleges as follows:
### INTRODUCTION

1.  Plaintiff is an "individual with a disability" as that term is understood pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and its implementing regulations. In addition, Plaintiff also falls within the protections of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. § 10:5-1 et seq.

2.  Plaintiff, a twenty-nine (29) year-old female, was born with a congenital birth defect that limits her ability to use her hands. Indeed, Plaintiff is unable to touch her own face. In addition, for mobility, Plaintiff requires the use of a motorized wheelchair on a daily basis.

3.  Because of her disability, Plaintiff requires the support of another individual to use the restroom facilities to relieve herself. Notwithstanding the foregoing, Plaintiff leads an active life. Indeed, Plaintiff owns and operates her own makeup business for which she has received high praise, as well as significant publicity and international recognition.[1]

---

[1] See, e.g., Rheana Murray, "Denied for her disability: How one makeup artist is defying the odds,"

1

4. Accordingly, Plaintiff routinely travels for work, family, and social functions.

5. As set forth below, Plaintiff suffered from severe emotional trauma, as well as public embarrassment and ridicule, due to Defendant's denial of full and equal access to the use of the restroom facilities at Defendant's property, known as the Hard Rock Hotel & Casino Atlantic City (the "Casino").

6. As explained herein, Defendant, in violation of the ADA and NJLAD denied Plaintiff access to the use of its restroom facilities with her companion, thereby causing Plaintiff to urinate on herself.

7. As the statute makes plain, the ADA seeks to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101. Further, Title III of the ADA prohibits discrimination against such individuals in their full and equal enjoyment of any place of public accommodation.

8. Likewise, the NJLAD prohibits discrimination against such individuals in the form of refusing, withholding or denying them "any of the accommodations, advantages, facilities, or privileges" of a place of public accommodation. N.J. Stat. § 10:5-12(f).

_____

NBC Today Show, December 4, 2015 (available at http://www.today.com/style/denied-her-disability-how-one-makeup-artist-defying-odds-t59736, last visited on August 24, 2015); Char Adams, "This makeup artist doesn't let her disability stop her – she applies cosmetics with her mouth," People Magazine, December 3, 2015 (available at http://www.people.com/article/jessica-ruiz-makeup-disabled-artist-mouth-arms, last visited on August 24, 2018); Beth Shapouri, "How Jessica Ruiz became a makeup Artist – without the use of her arms," Glamour Magazine, November 23, 2015 (available at https://www.glamour.com/story/how-jessica-ruiz-beat-the-odds, last visited on August 24, 2018); Sara Bliss, "Meet the amazing makeup artist who uses her mouth to paint faces," Yahoo.com, November 20, 2015, (available at https://www.yahoo.com/lifestyle/self-taught-disabled-makeup-artist-jessica-ruiz-123121362.html, last visited on August 24, 2018); Philadelphia's Fox 29, "Makeup artist overcomes physical difficulties to succeed in field," November 2, 2015 (available at http://www.fox29.com/salutes/43279915-video, last visited on August 24, 2018); Janice Armstrong, "Makeup artist living her dream despite limited use of hands," Philadelphia Daily News, October 29, 2015 (available at https://bit.ly/2MuSMUV, last visited on August 15, 2018);

2

9. Thus, the gist of both Title III of the ADA and the NJLAD is to provide, to the maximum extent possible, free and independent access to places of public accommodations – such as hotels and casinos – to individuals with disabilities.

10. Despite this unmistakable mandate, Defendant denied Plaintiff the full and equal enjoyment of its facilities by denying Plaintiff the necessary access to its restroom facilities.

11. Absent judicial assistance through Court orders and supervision, it is highly unlikely that Defendant will change their policies and practices in order to accommodate Plaintiff and other similarly situated individuals. Thus, absent Court intervention, Plaintiff will continue to be denied full and equal access to that facility and will be deterred from patronizing Defendant's facilities.

12. The ADA permits private individuals, such as Plaintiff, to bring suit in federal court to compel compliance with the ADA.

13. Accordingly, Plaintiff seeks: (i) a declaration that Defendant's facilities violate federal and New Jersey law as described; and (ii) an injunction requiring Defendant to either remove the identified access barriers, so that they are fully accessible to physically-impaired individuals such as Plaintiff, or implementation of a policy/procedure that will allow Plaintiff to access Defendant's restroom facilities.

14. Plaintiff also requests that once Defendant has fully complied with the requirements of the ADA and NJLAD the Court retain jurisdiction for a period of time to be determined to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

15. Further, as a result of Defendant's ADA and NJLAD violations and otherwise outrageous conduct, Plaintiff suffered extreme emotional distress.

## JURISDICTION AND VENUE

16.     This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

17.     In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims derive from a common nucleus of operative facts.

18.     Defendant does substantial business in this judicial district through advertisement and/or solicitation of customers.

## PARTIES

19.     Plaintiff is and, at all times relevant hereto, has been a resident of the Commonwealth of Pennsylvania. Plaintiff is and, at all times relevant hereto, has been a legally handicapped individual, and is, therefore, a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 et seq. Likewise, Plaintiff is also a member of a protected class under the NJLAD as she is a person with a disability. See N.J. Stat. § 10:5-12(f)(1).

20.     Defendant Boardwalk 1000, LLC is the owner and operator of the hotel and casino doing business as "Hard Rock Hotel & Casino Atlantic City." Its principal place of business is 1000 Boardwalk, Atlantic City, NJ 08401. Upon information and belief, it is owned by Hard Rock Café International (USA), Inc.

21.     According to Defendant's website, the Casino offers, *inter alia,* "rooms & suites," "dining," "entertainment," and "nightlife." See https://www.hardrockhotelatlanticcity.com (last visited August 15, 2018).

22.     Thus, Defendant is plainly a "public accommodation" pursuant to multiple

4

provisions of 42 U.S.C. § 12181(7). See, e.g., 42 U.S.C. § 12181(7)(A)(stating that a "hotel . . . or other place of lodging" is a place of public accommodation); 42 U.S.C. § 12181(7)(B) (defining a place of public accommodation to include a "restaurant, bar, or other establishment"); 42 U.S.C. § 12181(7)(C) (defining a place of public accommodation to include places of "entertainment").[2]

23.     Defendant is also a place of public accommodation as that term is understood in the NJLAD as Defendant caters to the public and, by advertising and other forms of invitation, induces patronage of its Casino generally.

## TITLE III OF THE ADA

24.     As the Supreme Court noted nearly twenty years ago, "Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." PGA Tour, Inc. v. Martin, 121 S. Ct. 1879, 1889 (2001).

25.     The ADA broadly protects the rights of individuals with disabilities with respect to employment, access to state and local government services, places of public accommodation, transportation, and other important areas of American life.

26.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

27.     Title III establishes the "general rule" that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases

---

[2] See also Ass'n for Disabled Ams., Inc. v. Concorde Gaming Corp., 158 F. Supp. 2d 1353, 1364 (S.D. Fl. 2001)(finding, after a bench trial, that "[t]he casino, restaurant, bar, and observation areas" of a vessel "are public accommodations subject to Title III").

5

to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

28. Under Section 302(b)(l) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

29. Under Section 302(b)(l) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, which is equal to the opportunities afforded to other individuals.

30. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

31. Indeed, Title III "requires without exception that any policies, practices, or procedures of a public accommodation be reasonably modified for disabled individuals as necessary to afford access unless doing so would fundamentally alter what is offered." PGA Tour,

6

Inc., 121 S. Ct. at 1896.

32.     Further, facilities newly built or altered after January 26, 1993 must be readily accessible and usable by disabled individuals, including individuals who use wheelchairs. See 28 C.F.R. § 36.401 and 28 C.F.R. § 36.402.

33.     As set forth below, Defendant has failed to ensure that individuals with disabilities, specifically individuals who needs support to use the restroom facilities, had full and equal access to Defendant's restroom facilities.

## THE NJLAD

34.     It is well settled that "the [NJLAD] is intended to be New Jersey's remedy for unacceptable discrimination and is to be liberally construed." Franek v. Tomahawk Lake Resort, 754 A.2d 1237, 1243 (App. Div. 2000).

35.     The NJLAD declares that it is a "civil right" to have the "opportunity to obtain all of the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of," among other things, disability. N.J.S.A. 10:5-4.

36.     The NJLAD is not limited to outright denial of access or service. Rather, it renders unlawful any acts discriminating against any person in the furnishing of the public accommodation including the mere discouragement of using a public facility due to that individual's protected status under the NJLAD.

37.     Indeed, Section 10:5-12(f)(1) of the NJLAD states that is shall be unlawful discrimination:

> For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to

7

discriminate against any person in the furnishing thereof, . . . any person on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding, sex, gender identity or expression, affectional or sexual orientation, disability, liability for service in the Armed Forces of the United States or nationality of such person, or that the patronage or custom thereat of any person of any particular race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding status, sex, gender identity or expression, affectional or sexual orientation, disability, liability for service in the Armed Forces of the United States or nationality is unwelcome, objectionable or not acceptable, desired or solicited

38.     Thus, under the NJLAD, it is irrelevant whether an individual was able to utilize the public accommodation. Rather, the focal issue is whether a defendant acted with an actual or apparent design to discourage present or future use of said accommodation by plaintiff on account of his/her disability.

39.     In order to eradicate such discrimination, "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs" in an action asserting a violation of the NJLAD. N.J.S.A. 10:5-13. Thus, a prevailing plaintiff is entitled to equitable relief as well as compensatory and punitive damages under the NJLAD.

## VIOLATIONS AT ISSUE

40.     Defendant owns, operates, and/or leases a place of public accommodation; namely, the Casino.

41.     Plaintiff has in the past traveled to Atlantic City to enjoy the nightlife and entertainment the city offers.

42.     Accordingly, Defendant's Casino is within Plaintiff's regular area of travel. She has patronized this location in the past and intends to continue to patronize Defendant's Casino in the future once she can utilize the restroom facilities there.

8

43.     Although Plaintiff desires to visit, and intends to visit the Casino, she continues to be denied full, safe, and equal access because of Defendant's failure to remove the barriers and will be deterred from visiting Defendant's Casino until those barriers are removed.

44.     On Thursday, August 9, 2018, Plaintiff traveled to Atlantic City to visit the newly opened Casino. She was accompanied on this trip by her companion, Robert.

45.     They had previously visited the Casino during its opening weekend and wanted to go back.

46.     This time, upon arriving at the Casino, Plaintiff immediately noticed several issues with the Casino regarding its accessibility to individuals with mobility issues. Plaintiff observed the existence of only one ramp to enter the facility, no automated doors near this ramp entrance, and only one ramp to enter the gaming area.

47.     After some time at the Casino, Plaintiff realized that she needed to utilize a restroom.

48.     As she needs support in using the restroom, Plaintiff and her companion began searching for a "unisex" or "family" restroom, as they are accustomed to doing when they visit public places. During this search, Plaintiff found only restrooms designated for "Men" or "Women."

49.     After some time, Plaintiff finally found what appeared to be a unisex or family restroom. This is because, as the pictures below makes clear, it had the universal images for both men and women located outside the door:

**(REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)**

9





50.     After waiting outside this locked restroom for some time, believing that it was occupied, Plaintiff approached a member of Defendant's security staff to request access to the restroom. Security did not have the key and instead attempted to track down custodial personnel to see if they had the key.

51.     It was at this time that Plaintiff and Defendant's own security personnel were advised that the unisex restroom was not, despite its markings on the outside, a restroom. Rather, it was a custodian's closet.

52.     Thus, despite its appearance to the contrary, the Casino only had restrooms designated for either "Men" or "Women," despite having what appeared to be the capability to have a unisex or family facility.

53.     Indeed, Defendant's security personnel then advised Plaintiff that there were no "unisex" restroom facilities in the Casino.

54.     Thereafter, Plaintiff explained to security that she required the support of her companion to use the restroom and requested that her companion (a male) be permitted to accompany her into one of the designated restrooms.

55.     Security refused to permit Plaintiff's companion from accompanying her into one of the restrooms, despite the fact that security was advised by Plaintiff that she was an individual with a disability and could not independently use the restroom without her companion's assistance.

56.     Plaintiff was horrified as security had, during her visit on opening weekend, cleared out the women's bathroom so that she and her companion could use it.

57.     This time, Defendant's security personnel refused to make any accommodation. Rather, they advised Plaintiff that it was the Casino's policy that her companion (who was the same person who assisted her during her previous visit), being of the opposite sex, was not

permitted to accompany – and assist – her in the restroom.

58.     Thereafter, Plaintiff attempted to use the closest "Women's" restroom without her companion's support. However, upon entering that restroom, Plaintiff saw that the lone stall large enough to accommodate her wheelchair was occupied.

59.     After several minutes, she asked Defendant's restroom attendant to assist in having the stall occupant hurry up and leave the lone accessible stall, so that she could use it. Defendant's attendant refused.

60.     Consequently, Plaintiff had to again seek Defendant's security personnel's assistance in having the person in the stall leave. During this time, Plaintiff – physically unable to wait any longer to relieve herself – urinated on herself, her seat cover, and her wheelchair.

61.     Plaintiff was distraught at having urinated on herself, and at having to continue to sit in soiled clothing until she could clean up and change her clothing.

62.     Seeing Plaintiff in tears, Defendant's security personnel requested that the head manager of the Casino come speak with Plaintiff.

63.     Three of Defendant's managers ultimately appeared. Thus, a crowd of onlookers began to stare at Plaintiff who was now soaked in her own urine and surrounded by three managers and an assortment of security personnel.

64.     Like the security personnel, the managers blamed the situation on corporate policy.

65.     One manager told Plaintiff, in a condescending way, that because Plaintiff was disabled, situations like this were something she had "to deal with in public places."

66.     This outrageous statement caused Plaintiff, who was now crying in public, severe emotional distress.

67.     Seeing a visibly distraught Plaintiff, another manager asked how she could make

12

Plaintiff's time at the Casino more enjoyable. Plaintiff responded that she needed new clothes.

68. The manager produced a pair of shorts and a tank top for Plaintiff to change into.

69. However, adding insult to injury, that manager informed Plaintiff that she would need to return to her own hotel to change her clothes as it was Defendant's policy not to permit companions of a different gender into the restroom.

70. As a result, Plaintiff was required to leave the Casino, while soaked in urine (in full view of other patrons), publicly humiliated, and utterly distraught.

71. Thus, during her visit, Plaintiff experienced difficulty, unnecessary risk, and embarrassment due to the Defendant's failure to accommodate Plaintiff to permit her to utilize the Casino's restroom facilities with her companion.

72. As a result of Defendant's failure to (i) have "family" or "unisex" restroom facilities and/or (ii) permit companions of the disabled into restroom facilities to assist the disabled in using said facilities, Plaintiff was denied full and equal enjoyment of Defendant's facilities because, unlike individuals without disabilities, she cannot independently use the restroom at the Casino.

73. Based upon representations made by Defendant's personnel to Plaintiff, it appears that Defendant has centralized policies and procedures regarding the use of the restrooms at the Casino by patrons, including those with disabilities.

74. Those policies and procedures are inadequate to ensure compliance with the ADA, as Plaintiff's experience clearly demonstrates that Defendant's Casino has no means, policy, or procedure to accommodate disabled individuals like Plaintiff in using the restroom.

75. As one of the newest casinos in Atlantic City, offering a host of different entertainment options, Plaintiff desires to visit Defendant's facilities in the future. However, so long as Defendant continues to deny individuals with disabilities full and equal enjoyment of their

Casino (by effectively denying them use of the restroom), Plaintiff will be unable to visit Defendant's Casino for any significant period of time, thereby, denying her full and equal access to Defendant's facilities.

76.     Indeed, had adequate policies or procedures been in place, Defendant would have presumably identified and corrected the ADA and NJLAD violations complained of herein by either designating a restroom a "family" or "unisex" restroom, or creating a policy or procedure to accommodate individuals with disabilities who necessarily require assistance in using the restroom facilities.

77.     Creating a policy to accommodate individuals with disabilities who need support to use the restroom facilities is effective, practical, and fiscally manageable for Defendant.

78.     Indeed, the Department of Justice's Technical Assistance Manual addresses this very issue by providing the following illustration: "An individual requires assistance in order to use toilet facilities and his only companion is a person of the opposite sex. Permitting a person of the opposite sex to assist an individual with a disability in a toilet room designated for one sex may be a required reasonable modification of policy." Dept. of Justice, Americans with Disabilities Act, Title III Technical Assistance Manual, § 4.2100, p. 24 (1994 supp.).

79.     Despite this illustration, Defendant maintains no unisex designated restrooms nor employs any policy to permit companions of disabled individuals who need support in using the restroom from accompanying such individuals into the restroom.

80.     Indeed, Defendant's policy effectively denies the use of the restroom facilities to any individual who needs support in using the restroom and is only accompanied by a person of the opposite sex. In short, Defendant's denial of the restroom facilities was based on Plaintiff's disability.

81.     Plaintiff has not returned to the Casino because of the difficulties and unnecessary risks she faces from Defendant's ADA and NJLAD violations that have impeded her ability to visit the Casino safely and independently.

82.     Plaintiff has been denied the full and equal enjoyment of Defendant's facilities as, based on her experience, Plaintiff would be required to (i) exit Defendant's premises and (ii) travel to another business in order to have her companion support her in using the restroom.

83.     No non-disabled individual must undertake such arduous steps while at Defendant's Casino.  Rather, such individuals are freely permitted to use the restrooms located within the Casino while enjoying the various entertainment and dining options at Defendant's facilities.

84.     In contrast, because of Defendant's failure to provide unisex restrooms and/or an appropriate policy/procedure regarding the use of designated restrooms, individuals who need support in using the restroom are denied the use of that same service (a restroom) that Defendant's abled-bodied patrons enjoy.

85.     The creation of a designated unisex bathroom and/or a policy regarding individuals who need support in using the restroom are both readily achievable.  Indeed, the designation of one or more of the existing restrooms can be accomplished without unreasonable difficulty or expense.

86.     Alternatively, Defendant could simply convert the custodial closet to what it appears was its original purpose – a unisex bathroom, as indicated by the signage.

87.     Plaintiff requests periodic monitoring to confirm that Defendant's Casino is brought into compliance and remains in compliance.

88.     Without injunctive relief, Plaintiff will continue to be denied full and equal

15

enjoyment of Defendant's facilities.

89.   Plaintiff estimates that this incident cost her actual out-of-pocket expenses due to being required to purchase cleaning solution and a new seat cushion for her wheelchair.

## COUNT I
## VIOLATION OF THE ADA
## (REMEDIATION)

90.   The allegations contained in the previous paragraphs are incorporated by reference.

91.   Defendant's facilities were required to be altered, designed, or constructed so that they are readily accessible and usable by individuals with disabilities individuals, including individuals who use wheelchairs and/or need the support of a companion. See, e.g., 42 U.S.C. § 12183(a)(1).

92.   The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who need support in using the restroom, including Plaintiff.

93.   The architectural barriers described above demonstrate that Defendant has failed to make its facilities fully accessible to individuals with disabilities in violation of the ADA.

94.   Complying with the ADA would neither fundamentally alter the nature of Defendant's services nor result in an undue burden to Defendant.

95.   Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations be fully accessible to individuals with disabilities, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

96.   Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies

16

that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its facilities be accessible to, and independently usable, by individuals with disabilities is likely to recur.

## COUNT II
## VIOLATION OF THE ADA
## (MODIFICATION OF POLICY)

97.     The allegations contained in the previous paragraphs are incorporated by reference.

98.     Defendant has discriminated against Plaintiff, in that it has failed to make its facilities fully accessible to individuals with disabilities in violation of the ADA, as described above.

99.     Implementation of a policy or procedure to permit a companion of the opposite sex to assist an individual with a disability in Defendant's restroom designated for the other sex is a manifestly reasonable modification of Defendant's existing policy regarding the use of the restroom. This is because such a modification would be effective in light of the nature of the disability at issue and the costs would be relatively small to Defendant.

100.     Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations be fully accessible to individuals with disabilities, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

101.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its facilities be accessible to, and independently usable, by individuals with disabilities is likely to recur.

## COUNT III
## VIOLATION OF THE NJLAD

102. The allegations contained in the previous paragraphs are incorporated by reference.

103. Based on the conduct described above, Defendant has discriminated against Plaintiff in violation of N.J. Stat. § 10:5-1 et seq.

104. Indeed, Section 10:5-12(f)(1) of the NJLAD states, *inter alia*, that it shall be unlawful discrimination for any public accommodation to "directly or indirectly to refuse, withhold from or deny . . . or to discriminate against any person" with a disability in the providing of any accommodations, facilities, or privileges the public accommodation otherwise offers to the public.

105. Likewise, the statute also makes it illegal for a public accommodation to expressly or implicitly make a disabled person's patronage "unwelcome, objectionable or not acceptable, desired or solicited" at said public accommodation. Id.

106. Thus, like the ADA, the NJLAD prohibits disability discrimination to those who offer or provide public accommodations.

107. By failing to provide a "unisex" restroom or permit her companion to support her in using the restroom, as set forth above, Defendant denied its services and facilities to Plaintiff.

108. Indeed, Plaintiff is not provided any restroom facilities at Defendant's Casino she can utilize.

109. In addition, by its conduct, Defendant denied Plaintiff equal treatment it provides to non-disabled individuals that patronage or visit Defendant's Casino as only Plaintiff is not provided any restroom facilities at Defendant's Casino.

110. Further, by failing to provide a "unisex" restroom or permit her companion to support her in using the restroom, Defendant directly and indirectly told Plaintiff that her patronage

18

is not welcomed as she is denied the use of the restrooms at Defendant's Casino.

111. Upon information and belief, Defendant's conduct is ongoing, and Defendant has not complied with the NJLAD's requirements that public accommodations not discriminate against individuals with disabilities.

112. Consequently, Plaintiff seeks equitable relief including an Order from this Court that Defendant (i) no longer discriminate against persons who require support in using the restroom facilities; (ii) institute and maintain a policy of non-discrimination on the basis individuals with disabilities needing support in using the restroom facilities; and (iii) post this policy prominently throughout Defendant's Casino. Further, Plaintiff requests that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it has fully complied with the Court's order discussed above.

113. In addition, Plaintiff also invokes her statutory right to "[a]ll remedies available in common law tort actions" including, but not limited to, compensatory and punitive damages. See N.J. Stat. § 10:5-13.

114. Finally, Plaintiff seeks reasonable attorneys' fees and costs as awarded by the Court. See N.J. Stat. § 10:5-27.1.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

115. The allegations contained in the previous paragraphs are incorporated by reference.

116. Defendant is liable to Plaintiff for the tort of intentional infliction of emotional distress in that: (i) the acts and conduct of Defendant and its personnel were intentional and/or reckless; (ii) Defendant's acts and conduct were atrocious, outrageous, beyond all possible bounds of common decency, and utterly intolerable in civilized society; (iii) Defendant's acts and conduct were the proximate cause of the emotional distress sustained by Plaintiff; and (iv) the emotional

19

distress sustained by Plaintiff was genuine and substantial and had a demonstrable negative effect on her life.

117.    As a result of Defendant's conduct, Plaintiff has suffered compensatory damages, including (but not limited to) severe and continuing emotional pain and suffering, mental anguish, public humiliation and embarrassment, as well as physical pain and suffering.

118.    The conduct of Defendant was willful and wanton.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above;

b.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the LAD described above;

c.      A permanent injunction which directs Defendant to take all steps necessary to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its facilities are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

d.      An Order from this Court directing Defendant to (i) no longer discriminate against persons who require support in using the restroom facilities; (ii) institute and maintain a policy of non-discrimination on the basis individuals with disabilities needing support in using the restroom facilities; and (iii) post this policy

prominently throughout Defendant's Casino.

e.    Payment of costs of suit;

f.    Payment of reasonable attorneys' fees; and

g.    The provision of whatever other relief the Court deems just, equitable and appropriate.

WHEREFORE, Plaintiff, on behalf of herself, prays for:

a.    A Declaratory Judgment that at the commencement of this action Defendant was in violation of the LAD described above;

b.    An award of compensatory damages;

c.    An award of punitive damages;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees; and

f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

## (SIGNATURE ON THE NEXT PAGE)

21

Date: <u>August 24, 2018</u>

Respectfully submitted,
**KALIKHMAN & RAYZ, LLC**

Arkady "Eric" Rayz
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406
Telephone: (610) 822-3700
Facsimile: (610) 822-3800
Email: gwells@cwglaw.com
Email: rgray@cwglaw.com

Counsel for Plaintiff